## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Kevin J. Williams and T. Steel Corp., | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 09-1168 |
| | ) | |
| American Equipment & Fabricating Corp. | ) | |
| Defendant/ | ) | |
| Third Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Soilmec SpA, | ) | |
| Third Party Defendant | ) | |

### ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the Third Party Defendant's motion to dismiss the third party complaint for lack of personal jurisdiction and for untimeliness (#66). The motion is fully briefed and I have carefully considered the submissions of the parties. As explained herein, the motion to dismiss is GRANTED.

### I. PLEADINGS

Plaintiff Kevin J. Williams was employed by T. Steel Construction Inc. ("TSC"). According to the complaint, TSC purchased a certain hydraulic drilling rig from American Equipment & Fabricating Corporation ("American Equipment"). The rig is alleged to have been unreasonably dangerous at the time of its manufacture and sale and to have caused injury to Williams on October 10, 2007, while Williams was operating the rig in the course of his employment. The complaint, filed by Williams and his employer, includes both a strict liability and a negligence claim against American.

American has brought a third party action against Soilmec SpA[1]. According to the third party complaint, the rig was manufactured by Soilmec SpA; American merely distributed Soilmec SpA's products to end-users such as TSC. To the extent that the rig was the cause of Williams' injuries, American alleges that those injuries were caused by acts or omissions of Soilmec SpA.

Soilmec SpA has brought the instant motion to dismiss American's third party action. The motion is in two parts. The first part, brought pursuant to Fed.R.Civ.P. 12(b)(2) asserts that this Court lacks jurisdiction over the person of Soilmec SpA. The second part, brought pursuant to Fed.R.Civ.P. 12(b)(6), asserts that the third party complaint was untimely filed.

## II. PERSONAL JURISDICTION

### *A. GENERALLY*

While a complaint need not include facts alleging personal jurisdiction, see Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987), a plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendants once defendants move to dismiss for lack of personal jurisdiction. See, Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004); Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 781-82 (7th Cir. 2003); McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir. 1994); Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir.1998).

A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction. Steel Warehouse

---

[1] At various places in the pleadings filed by the third party Defendant, the third party Defendant is referred to as Soilmec, S.P.A. Other times there is no punctuation at all, and sometimes there is just a comma. Likewise, capitalization of SPA is altered. In this Order, the third party Defendant is referred to as Soilmec SpA, which appears most frequently.

of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir.1998); Wilson v. Humphreys Ltd., 916 F.2d

1239, 1243 (7th Cir.1990). Personal jurisdiction in Illinois is governed by the long arm statute, 735

ILCS 5/2-209 (West 2004).

Historically, Illinois courts employed a two-step analysis to determine whether the plaintiff

established a *prima facie* case for personal jurisdiction by evaluating: (1) personal jurisdiction under

the long-arm statute; and (2) due process under both the United States and Illinois Constitutions.

Crum & Forster Specialty Insurance Co. v. Extended Stay America, Inc., 873 N.E.2d 964

(Ill.App.2007). In 1989, the Illinois legislature amended the long-arm statute to include subsection

2-209(c), referred to as the "catch-all" provision, which provides a court with personal jurisdiction

based on "any other basis now or hereafter permitted by the Illinois Constitution and the

Constitution of the United States." Kostal v. Pinkus Dermatopathology Laboratory, P.C., 827 N.E.2d

1031 (Ill.App.2005).

This subsection of the long arm statute has since been treated as an independent basis for

asserting *in personam* jurisdiction over a defendant; personal jurisdiction may be asserted so long

as it does not offend the guarantees of due process provided by the Illinois and United States

Constitutions. Alderson v. Southern Co, 747 N.E.2d 926 (Ill.App.2001). Once federal and state due

process requirements[2] have been met, analysis of the other enumerated acts listed in the statute is

---

[2]The Kostal court has read Rollins v. Ellwood, 565 N.E.2d 1302 (Ill.1990) as requiring a
different two-step analysis, based on the possibility that Illinois' due process guarantees may
diverge from federal due process guarantees. Kostal, 827 N.E.2d at 1036-37. As noted in a
number of federal cases and acknowledged in Kostal, no Illinois case has ever articulated any
difference between the State and Federal due process limits on personal jurisdiction, so the "two
constitutional analyses collapse into one." Id. at 1037, quoting Allied Van Lines Inc. v. Gulf
Shores Moving & Storage, Inc., - F.Supp. 3d -, 2005 WL 418032, Feb. 23, 2005(N.D.Ill), and
citing cases.

unnecessary. <u>Kostal</u>, 827 N.E.2d 1031; <u>Crum & Forster</u>, 873 N.E.2d 964; <u>Sabados v. Planned Parenthood of Greater Indiana</u>, 882 N.E.2d 121 (Ill.App.2007).

Illinois law recognizes two types of personal jurisdiction: specific and general. "Specific jurisdiction" refers to personal jurisdiction in a suit arising out of or related to the defendant's contacts with the forum state, while "general jurisdiction" applies to suits neither arising out of nor related to the defendant's particular activities and is proper only where the defendant has continuous and systematic business contacts within the forum state. See, <u>Illinois Commerce Com'n v. Entergy-Koch Trading</u>, 841 N.E.2d 27 (Ill.App.2005). See also, <u>Goodyear Dunlop Tires Operatons, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851 (2011). The distinction between these types of personal jurisdiction is also acknowledged under federal law. See, <u>uBID, Inc. v. GoDaddy Group, Inc.</u>, 623 F.3d 421, 425 (7th Cir. 2010). In this case there is no assertion of general jurisdiction; only specific jurisdiction is in question.

In <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980), the state court had exerted specific jurisdiction over a foreign manufacturer, based on the unilateral act of a consumer who purchased a car and then had an accident while driving through the forum state. The state court had concluded that, given the mobile nature of a car, the manufacturer could foresee being haled into court in any state where a consumer might drive. The Supreme Court rejected the concept that mere foreseeability is sufficient to satisfy the Due Process Clause. Noting that foreseeability is not wholly irrelevant, it is not the possibility that a defendant's product will find its way into a forum state but rather the defendant's conduct and connection with the forum state that make it reasonable to anticipate that he may find himself being haled into court in that forum. <u>Id</u> at 297.

Elaborating on the types of conduct vis-vis a forum, the Court stated,

The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state...Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other state, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.

Id. at 297.

Following World-Wide Volkswagen, lower courts disagreed about the import of the "stream of commerce" language quoted above. Whether personal jurisdiction could be based solely on a defendant's act of placing a product into the stream of commerce, or whether some additional contact with the forum state was necessary, was the question taken up by the Supreme Court in Asahi Metal Industry Co. v. Superior Court of Cal., 480 U.S. 102 (1987). Asahi Metal Industry, a Japanese company, manufactured valve stems, which were sold to several tire manufacturers, including Cheng Shin, a company in Taiwan. Cheng Shin in turn incorporated the assemblies into finished tires, selling them all over the world. Twenty percent of its sales were in California. A motorcycle accident occurred in California, allegedly caused by a defect in a Cheng Shin tire. The California Supreme Court found that Asahi had intentionally placed its assemblies into the stream of commerce by delivering them to the Taiwan company, knowing that a significant number of them would reach California. This, said the State's Court, was enough to support specific jurisdiction over the Japanese company.

The United States Supreme Court reversed, but the decision was split. Justice O'Connor's opinion, joined by three other Justices, described the "substantial connection" between the defendant and the forum state that must exist and held that this connection must "come about by an action of

the defendant purposefully directed toward the forum State." <u>Id.</u> at 112, quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) and <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984). This plurality indicated that "additional conduct" is required, and that such conduct must indicate an intent or purpose to serve the market in the forum state. A defendant's "awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." 480 U.S. at 112. Because the defendant had no office, agents, employees or property in the forum State, and did not advertize or solicit business there, and because it did not create, control or employ the distribution system, exerting personal jurisdiction exceeded "the limits of due process. <u>Id.</u> at 113.

The plurality, joined by 3 additional Justices, then applied the types of factors previously found pertinent to the determination of whether exertion of jurisdiction would "offend traditional notions of fair plan and substantial justice." <u>Id.</u>, quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). These factors, which determine "the reasonableness of the exercise of jurisdiction," are the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the "interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." <u>Asahi</u>, 480 U.S. at 113, quoting <u>World-Wide Volkswagen</u>, 444 U.S. at 292. Weighing these factors led to the conclusion that exercise of specific jurisdiction under these circumstances would be unreasonable.

In the first concurring opinion, Justice Brennan distinguished the single isolated occurrence in World-Wide Volkswagen from the sort of organized, regular placement of items into the stream of commerce that was present in the case before the Court. He emphasized the significant difference in "foreseeability" that these two divergent situations present, noting the manufacturer's knowledge that its sales of component parts resulted in regular sales of the final product within the forum state. Asahi, 480 U.S. at 120. In the second concurring opinion, Justice Stevens found that the discussion of stream of commerce or minimum contacts was wholly unnecessary to decide the case before it, because application of the pertinent factors showed that it was "unreasonable and unfair" to exert jurisdiction under the facts presented. Id. at 121.

The only standard agreed on by a majority of the Asahi Court was the "fair play and substantial justice" standard. Beyond that point of agreement, the case left most of the questions about "stream of commerce" unanswered. Twenty some years later, the Court once again confronted the issue, and once again was unable to reach a majority decision with respect to "stream of commerce" as a basis for personal jurisdiction. In J. McIntyre Machinery Ltd v. Nicastro, - U.S. -, 131 S. Ct. 2780, 2785, 180 L.Ed. 2d 765 (2011), the Court reversed the assertion of jurisdiction over a foreign defendant who had utilized a U.S. distributor to sell its products in the U.S. but not specifically in the forum state. Four Justices would have rejected the stream of commerce theory altogether. Two Justices found it unnecessary to consider stream of commerce at all because World-Wide Volkswagen had found that a single isolated sale in the forum state - even if accompanied by a national sales effort - was insufficient for specific jurisdiction. Three Justices dissented, opining that the national marketing campaign, directed at all 50 states with the expectation that substantial revenues will result from sales across the country, should subject the foreign company to the jurisdiction of a court in a State where its product causes injury to a user of the product.

7

It is fair to say that, because neither <u>Asahi</u> nor <u>J. McIntyre</u> contains a majority opinion other than the "fair play and substantial justice" standard, neither has definitively changed the landscape of specific jurisdiction. Indeed, the Seventh Circuit continued to apply that standard after <u>Asahi</u>. See, e.g., <u>Mason v. LLI Luigi & Franco Dal Maschio</u>, 832 F.2d 383 (7th Cir. 1987); <u>Dehmlow v. Austin Fireworks</u>, 963 F.2d 941 (7th Cir. 1992); <u>Jennings v. AC Hydraulic A/S</u>, 383 F.3d 546 (7th Cir. 2004). That is, therefore, the standard that will be applied to consider the jurisdictional issue presented in this case.

The <u>Jennings</u> case is instructive. In that case, the defendant manufactured jacks in its factory in Denmark. It had no direct connection with Indiana. More than 80% of its products were distributed in world export markets. It occasionally sold its products to 2 distributors in Florida, but the record contained no information about how many sales were made or where the distributors re-sold the product. The company had a passive website accessible in Indiana; it contained product descriptions but no orders could be placed on the website. Plaintiff's employer purchased one of these jacks, but the record did not state where, when or from whom.

The Court of Appeals began by stating the jurisdictional standard underpinning each of the cases cited above:

> To establish specific jurisdiction under the familiar "minimum contacts" analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, and that the exercise of personal jurisdiction over that defendant would comport with "traditional notions of fair play and substantial justice."

<u>Id.</u> at 549 [citations omitted].

The plaintiff in <u>Jennings</u> had relied on two theories for the proposition that specific personal jurisdiction existed over the Danish company: it advertised its products to consumers in the United States, including residents of the forum state, by maintaining an English-translated website, and it

sold some of its products to distributors in Florida, thus placing them in the "stream of commerce" of the U.S. market, which included the forum state.

The Seventh Circuit first rejected the proposition that maintaining a passive web site is sufficient to establish personal jurisdiction, even if that web site can be accessed from the forum state. Although personal jurisdiction can be established without physical presence, that is only possible if there are business activities "purposefully directed" at consumers in a forum state(s). A passive web site is not "purposefully directed." Id. at 549-50, citing Burger King, 471 U.S. at 476.

The "stream of commerce" analysis is more complex. First, the Court of Appeals noted that simply placing products into the stream of commerce is not enough; it must be accompanied at least by an "awareness or expectation" that some of these products will be purchased in the forum state. 383 F.3d at 551, citing World-Wide Volkswagen , 444 U.S. at 297-98 and Dehmlow v. Austin Fireworks, 963 F.2d 941, 946-47 (7th Cir. 1992). See also, Nelson by Carson v. Park Industries Inc., 717 F.2d 1120, 1126 (7th Cir. 1983)(manufacturer may reasonably anticipate being haled into court when it places goods into stream of commerce knowing that the distribution system will result in goods being destined for sale in the forum state).

The Jennings Court noted that, like World Wide Volkswagen, the record in the case before it contained insufficient information to show any such expectation. More, said the Court of Appeals, was needed, explaining:

> With the free flow of commerce within the United States today, it may seem counterintuitive that a foreign manufacturer ... who sells goods to a distributor in the United States should not be assumed to have the expectation that its goods may end up for sale in any one of the fifty states. But the Supreme Court stressed in World-Wide Volkswagen that, although the United States was meant to be a "common market," state lines are not irrelevant for jurisdictional purposes. For this reason, at least in diversity cases, personal jurisdiction may not be exercised over a nonresident defendant unless "minimum contacts" between the particular state in which the court sits and the defendant have been established.

<u>Jennings</u>, 383 F.3d at 551.

The specific discussion that follows the above quotation in <u>Jennings</u> is important for the case now before this Court. In that discussion, the Seventh Circuit noted that although there was evidence that the foreign defendant sold some of its products to two distributors in Florida, there was no "volume" information for those sales, nor was there information about where the distributors re-sold those products. Hence, said the Court,

> the scope of any alleged distribution in the rest of the United States, and whether any [of defendant's] products have been distributed in Indiana, cannot be determined. The bottom line is that, relying on the sparse evidence that Jennings presented, we do not know how the jack in question got to Indiana, or any other [of defendant's] products have ever been sold there. It is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in <u>World-Wide Volkswagen</u>.

<u>Jennings</u>, 383 F.3d at 551. The Jennings Court also noted that where the record contains such information, the question left open in <u>Asahi</u>, <u>supra</u>, (namely, whether the stream of commerce theory of personal jurisdiction requires purposeful direction of business activities into the forum state) is directly presented. <u>Id.</u> at 550 n.2.

In <u>Colo'n v. Akil</u>, 449 Fed.Appx. 511, Case No. 11-1950, 2011 WL 5869454, *2, Nov 23, 2011 (7th Cir.), (Table, text in Westlaw), the Seventh Circuit reviewed the District Court's conclusion that it lacked personal jurisdiction over a subsidiary company, CBS Studios, of CBS Corporation. The District Court found that the company had no meaningful contacts with Indiana at all and none related to the copyright in question. The Court also declined to impute to the subsidiary the contacts of the parent company (which had much more extensive, nationwide contacts) because the two companies were separate, observed corporate formalities, and the parent exercised no day-to-day management over the subsidiary. The District Court concluded that CBS

10

Studios had not availed itself of the privilege of conducting business in Indiana because the copyrighted television script had never been produced in Indiana.

On appeal, the Seventh Circuit affirmed. Beginning with the proposition that "purposeful availment hinges on whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign," 449 Fed.Appx at 514, citing J.McIntyre, 131 S.Ct. at 2851, the Court considered the factors that plaintiff posited as sufficient to support personal jurisdiction. First, the Court of Appeals rejected the idea that "corporate affiliation" between parent and subsidiary, standing alone, could confer jurisdiction when they exist as separate corporate entities[3]. Next the Court considered whether the fact that the television episode aired in Indiana constituted "express aiming" at the forum. The Court found that, because the defendant did not know of her script before the episode aired, it could not be said that the defendant acted with knowledge that harm to the plaintiff would be caused in the forum. Finally, the Court of Appeals rejected her argument that she should have been allowed to conduct discovery before the defendant was dismissed, because she had failed to make "at least a colorable showing" of personal jurisdiction, a prerequisite to allowing limited discovery on that issue.

Our sister Court in the Northern District of Illinois has also discussed the effect of

---

[3]Ordinarily, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent corporation. Schultheis v. Community Health Systems, Inc., - F.Supp. 2d -, Case No. 11-0435, 2012 WL 253366, *2, Jan 26, 2012 (S.D.Ill.), citing Purdue Research Found. v. Sanofi–Syntholabo, S.A., 338 F.3d 773, 788 n. 17 (7th Cir.2003) (" personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."). There is no evidence before this Court of any failure by Soilmec SpA to exercise corporate formality in its relationship with Soilmec N.A. No further discussion of this issue is therefore necessary at this preliminary stage.

J.McIntyre on the "stream of commerce" theory. In Original Creations Inc. v. Ready America, Inc., - F. Supp. 2d -, 2011 WL 4738268 (N.D.Ill.2011) - a patent infringement case - the defendant sold its products to two distributors that marketed to Illinois residents by means of a clearly defined network that included at least 21 stores in Illinois. In determining whether the defendant "purposefully directed its activities" at Illinois residents, the Original Creations Court looked at two factors: maintenance of an interactive website by which Illinois residents were able to order the allegedly-infringing product; and the fact that the products were sold in Illinois through two Illinois distributors . With respect to the website, there was only one documented sale through that website - the sale to the plaintiff - and the Court found that insufficient to support the exercise of jurisdiction over the defendant.

Plaintiff's stream of commerce theory was more successful. Plaintiff argued that the defendant had made multiple sales directly to two distributors with multiple stores in Illinois, thereby targeting Illinois. The District Court agreed, distinguishing the facts in J.McIntyre with those before it. Whereas the defendant in J.McIntyre used a nationwide distributor that used general marketing efforts, the distributors in Original Creations directly marketed to Illinois residents. The Court concluded[4] that the defendant had "taken advantage of the clearly defined distribution network...which includes at least 21 stores in Illinois." In addition, the records showed two separate

---

[4]Federal Circuit case law governs personal jurisdiction in patent cases unless that Court has not addressed a specific issue, in which case Seventh Circuit law applies. Original Creations, 2011 WL 4739268, *1. As a rule, specific jurisdiction in a patent case comports with due process if "the defendant purposefully directed its activities at residents of the forum, the claim arises out of or relates to those activities, and assertion of personal jurisdiction is reasonable and fair." Id., citing cases. The Original Creations Court ultimately relied on Federal Circuit cases which distinguish between defendants who control the distribution channel and those who do not. Id. Because the case now before this Court is not a patent case, these cases are not controlling, and the Court looks to Seventh Circuit law.

sales of the infringing product in Illinois, with stocking of that product at a third store.

There are also two Illinois state court cases that contain helpful discussions. In Russell v. SNFA, - N.E.2d -, 2011 WL 6965795, *1+, Dec 16, 2011 (Ill.App.), the plaintiff's decedent died in a helicopter crash in Illinois that was allegedly caused when one of the tail-rotor drive-shaft bearings failed. The estate sued the manufacturer of those bearings, a French company that custom made bearings for several manufacturers, including the helicopter manufacturer in question. The bearings were sold directly to the helicopter manufacturer, which incorporated them into its helicopters which were sold to its American subsidiary, which then sold them to a Louisiana aviation company. Two of the helicopters - but not the one in question - had been sold to Illinois companies.

The trial court granted the motion to dismiss, finding that the crash did not arise from the company's Illinois contacts, and that contacts with Illinois were insufficient to support general jurisdiction. On appeal, the Court found that specific jurisdiction existed. As the appellate court applied Asahi, and J. McIntyre, it relied on another District Court case that four Justices in the Asahi Court had contrasted with the facts before it, Rockwell Internat'l Corp.v. Costruzioni Aeronautiche Giovanni Agusta, S.p.A., 553 F. Supp. 328 (E.D.Pa. 1982). The Asahi Court found significant that the component part manufactured by Asahi was not manufactured specifically for the tire company that incorporated it into its tires. In Rockwell, on the other hand, the defendant had designed its product in anticipation of sales in the forum state. Under the Rockwell facts, the foreign company benefitted - and intended to benefit - from marketing and distribution by the manufacturer in the U.S. and knew that it would be marketed in any or all of the 50 states. Hence, the distribution channel is simply a "conduit" by which the custom-made product reaches ultimate consumers. 2011 WL 6965795 at *8.

13

The <u>Russell</u> Court also noted that all the <u>J. McIntyre</u> Justices agreed that, given the right set of facts, distribution by an American distributor could be sufficient to establish personal jurisdiction. <u>Id</u>. While in <u>J. McIntyre</u> , there had been only one sale to the forum state, in <u>Russell</u>, there had been over 2,000 parts sold in the 7 years prior to suit being filed. In addition, 5 of the helicopters with defendant's bearings had been sold to Illinois entities during that same period. As the Court noted, "Since an expensive item like a helicopter is unlikely to be sold in mass quantities, the price of five helicopters represents significant sales in terms of dollar-value." <u>Id.</u> at *9.

See also, <u>Soria v. Chrysler Canada, Inc.</u>, 958 N.E.2d 285, 295 (Ill.App. 2011) (established distribution channel that results in numerous sales within the forum state sufficient for personal jurisdiction).

## B. MOTIONS TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION

In federal court, the judicial approach to considering a question of personal jurisdiction is well established. "[A] complaint need not include facts alleging personal jurisdiction." <u>Steel Warehouse of Wisconsin, Inc. v. Leach</u>, 154 F.3d 712, 715 (7th Cir.1998). However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. <u>Purdue Research Foundation v. Sanofi-Synthelabo, S.A.</u> , 338 F.3d 773, 781 -782 (7th Cir.2003), citing <u>Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 939 (7th Cir.2000); <u>Steel Warehouse</u>, 154 F.3d at 715; and <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1276 (7th Cir.1997). See also, <u>Hyatt Intern. Corp. v. Coco</u>, 302 F.3d 707, 713 (7th Cir. 2002); and 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 1351, pp. 226-27 (2d ed. Supp.2001).

The <u>Purdue</u> Court has explained that the precise nature of a plaintiff's burden depends on whether an evidentiary hearing has been held. 338 F.3d at 782. When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. <u>Id.</u>, citing <u>Hyatt</u>, 302 F.3d at 713. On the other hand, if the district court rules on a motion to dismiss based only on written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." 338 F.3d at 782, citing <u>Hyatt</u>, 302 F.3d at 713; <u>Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal</u>, 859 F.2d 1302, 1306 n. 7 (7th Cir.1988); and <u>Nelson v. Park Indus., Inc.</u>, 717 F.2d 1120, 1123 (7th Cir.1983) (court may receive and weigh affidavits to determine whether it has personal jurisdiction; during this preliminary proceeding, "the burden of proof is met by a *prima facie* showing that personal jurisdiction is conferred under the relevant jurisdictional statute"). In evaluating whether the prima facie standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." <u>Nelson</u>, 717 F.2d at 1123; see also <u>RAR</u>, 107 F.3d at 1275 (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor").

## *C. JURISDICTIONAL FACTS*

As mentioned above, it is not argued that Soilmec SpA maintains the types of continuous and systematic contacts with the State of Illinois to establish general jurisdiction. The question before this Court is whether the exercise by this Court of specific jurisdiction over Soilmec SpA comports with due process concerns.

Soilmec SpA's Controller Franco Nanni has tendered an Affidavit, (Doc. #67-1). In response to the Court's Order of Dec. 1, 2011, Nanni submitted a supplemental Affidavit (Doc.#75). Also in response to the Court's Order, Gil Peel, the President of American Equipment filed an Affidavit.

15

(Doc. #76) Those Affidavits are crucial in explaining the relationship between Soilmec SpA.; Soilmec N.A. (not a party), American Equipment & Fabricating Co.; and T. Steele Construction, as well as shedding light on the nature of any of Soilmec SpA's contacts with Illinois.

Soilmec SpA has its office and principal place of business in Italy. It is owned by Trevi Finanziaria Industriale SpA, a company located in Cesena, Italy. Soilmec SpA does not and has never owned any property in Illinois. It does not and never has run an office in Illinois, nor has it ever employed any employees or a sales force within the State of Illinois. It has no agent for service of process in Illinois. It does not manufacture any goods in Illinois, and it sells no goods directly to any distributor or consumer in Illinois. It does not directly advertise or directly market its products to consumers in Illinois. It has no bank accounts or telephone contacts in the State, and it has never paid taxes in Illinois. It has no ownership interest in or affiliation with distributors or dealers in Illinois, and it has no subsidiaries located in Illinois. It has never taken orders directly from consumers in Illinois but sells only through its dealers and distributors.

The supplemental affidavits reveal that a significant change in the relationship between Soilmec SpA and its distributors occurred in February of 2008. Because the underlying event occurred October 10, 2007, it is the earlier period that is most important.

Before February of 2008, American Equipment (located in Rhode Island) and Champion Equipment Sales (located in California) were the exclusive dealers in the United States for rigs manufactured by Soilmec SpA. Soilmec SpA sold its rigs to American Equipment and Champion; the two dealers then resold the rigs to their customers for a profit. Soilmec SpA had no control over those sales, and American Equipment was not required to report any information about the sales to Soilmec SpA, including the customer's name or location.

On Feb. 1, 2008, Soilmec SpA, American Equipment, and Champion created Soilmec North America ("Soilmec NA), American Equipment and Champion each own 10% interest in Soilmec NA, while the remaining 80% is owned by Soilmec International B.V, a company wholly owned by Soilmec SpA.

Soilmec NA is a Texas based company that, upon its 2008 creation, became the exclusive dealer for all Soilmec SpA rigs sold in the United States. American Equipment and Champion became agents of Soilmec NA. Soilmec SpA sells its rigs to Soilmec NA, which then consigns those rigs to either American Equipment or Champion for sale. When a sale is completed, Soilmec NA is invoiced for the sales commission.

American Equipment's records show that 4 Soilmec drilling rigs were sold to Illinois purchasers between 1998 and 2004, and 10 Soilmec drilling rigs were sold to Illinois purchasers after January 1, 2004. Among these 14 rigs were the three rigs sold to the Plaintiff's employer, T. Steele Construction, two in 2001 and one in 2006. All 14 of these rigs were set up by employees of American Equipment, including the 3 rigs purchased by T. Steele Construction. These employees resided in either Rhode Island or Massachusetts and traveled to Illinois for the purpose of setting up the rigs.

According to the testimony of Kevin Williams, if he ever had a problem with one of the rigs, Williams either consulted an operator's manual that was kept behind the seat in the rig, or he called a telephone number out east ("It was like a New Jersey number, New York number or something.") and "[t]hey would tell you what to look for on the drill." [Deposition of Kevin Williams, pp. 84-89]. Nanni's Affidavit states that Soilmec SpA has "never maintained a phone number or service hotline in the United States for any purpose. All problems and service issues would be the responsibility of

Soilmec SpA's dealers, such as American Equipment." (Doc. #75, ¶ 10).

Peel's Affidavit states that American Equipment "lacks specific knowledge" of the specific number to which Willams referred. Peel goes on to state that American Equipment did provide a telephone number to customers and that it employed "the persons giving technical support when the above number was called." He adds, however, that "Soilmec's website boasts prompt and professional after-sale service, encouraging customers to contact Soilmec when service on their products is necessary." Peel states that this website advertises Soilmec products and states the intention to provide a "Soilmec unit for any engineering job around the world." (Doc. #76 ¶ 7).

With respect to marketing and advertising, American Equipment states that, prior to Feb. 1, 2008, it managed and directed Soilmec's efforts in the United States, including purchasing advertising in trade association magazines. After creation of Soilmec NA in 2008, the new company began "managing and directing its own advertising. This includes purchasing advertisements in trade association magazines and attending trade shows. Most recently ("the last couple of years"), Champion Equipment "has primary focus on the marketing campaign of Soilmec. It is Champion Equipment's focus to ensure a Soilmec advertisement appears in every related trade association magazine in the United States." (Doc. #76 ¶ 7).

Additional marketing, according to American Equipment's President, was Soilmec SpA's participation in trade shows. According to him, Soilmec SpA has attended and participated in a national equipment show every third year since 1990. This show, sponsored by the Association of Drill Shaft Contractors, is held in different locations each year, including Texas and Florida. Soilmec SpA also participated in other shows in Michigan and Nevada. (Doc. #76 ¶ 7).

Nanni's Affidavit acknowledges "occasional" advertising by Soilmec SpA in international

newspapers or journals but denies any knowledge of any "publications directed to any state in the United States used by Soilmec SpA to advertise its products." (Doc. #75 ¶ 14). He also identifies two specific trade shows in Nevada that were attended by Soilmec SpA representatives, as well as International Association of Foundation Drilling trade shows that were held in the United States but never in Illinois. (Id. at ¶ 15).

Soilmec SpA denies use of any agency to advertise or market its products in the United States. Instead, this is the responsibility of its agents, such as American Equipment. The agents do not consult with Soilmec SpA with respect to advertising and marketing, and Soilmec SpA does not pay for any advertising and marketing conducted by its agents.

## *D. DISCUSSION*

Before beginning an analysis, it is necessary to note a problem with Plaintiff's argument: it completely ignores the distribution scheme that exists between Soilmec SpA and the purchaser in Illinois. Plaintiff simply argues that Soilmec manufactured the drill in question and sold it to Plaintiff's employer. That is a mis-characterization of the facts that have been presented through the affidavits submitted by both Nanni and Peel. The Soilmec defendant that is the Defendant in this case did not sell a drill rig to Plaintiff's employer. Soilmec SpA sold the drill rig in question to American Equipment, which in turn sold it to Plaintiff's employer.

Plaintiff relies on his own deposition testimony that "a Soilmec employee" was present when the drill rig was set up, but no effort at all has gone into showing how a drill rig operator such as Kevin Williams would have any basis for knowing whether that "Soilmec employee" was employed by Soilmec SpA or by Soilmec N.A. or by some other Soilmec entity or even by some entity other than Soilmec. His deposition testimony does not support a conclusion that Soilmec SpA was ever

19

itself physically present in Illinois or involved in drill rig set up, especially in light of the affidavits that emphatically indicate to the contrary.

Despite those problems, however, the case law discussed above makes it clear that, given the right set of facts, personal jurisdiction may arise from a distribution system. The question here is whether Plaintiff has made out a prima facie showing of such a distribution system.

At the time of the incident in question, Soilmec SpA sold its drill rigs directly to the two American distributors, neither of whom is located in Illinois. While it is true that 14 Soilmec drilling rigs were sold to Illinois purchasers between 1998 and the date of the incident in 2007, including 3 to Plaintiff's employer (in 2001 and 2006), the Affidavits make it clear that those sales were made by American Equipment, not Soilmec SpA. All post-sale contacts with the purchasers were made by employees of American Equipment Once they were sold, there is absolutely nothing in the record to suggest that Soilmec SpA had any further knowledge about or involvement with the rigs; their sale, set-up, maintenance, and repair all were the responsibility of either the distributor - American Equipment as is pertinent here - or the purchaser - T. Steele Construction.

The outcome of this analysis might well be different if this incident had occurred as a result of a sale after Feb.1, 2009. There were significant changes to the distribution system, including changes to Soilmec SpA's involvement in the distribution and sale of the rigs. But the incident occurred on October 10, 2007, well before those changes occurred. It may be true that Soilmec SpA placed the rigs into the stream of commerce by selling them to American Equipment, but once those sales were made, Soilmec SpA took no additional step that targeted Illinois for re-sale of the rigs, including specifically the rig that is in question in this case.

Under the case law discussed above, and given the arrangement between Soilmec SpA and

20

American Equipment that existed in 2007, it simply cannot be said that Soilmec SpA "purposefully availed itself of the privilege of conducting activities" in Illinois, or that the exercise of personal jurisdiction over that defendant would comport with "traditional notions of fair play and substantial justice." <u>Jennings</u>, 383 F.3d at 549. I conclude that this Court lacks personal jurisdiction over the person of Soilmec SpA. Soilmec SpA's motion to dismiss for lack of personal jurisdiction is therefore GRANTED.

## *II. TIMELINESS*

Soilmec SpA has also moved to dismiss on the grounds that the third-party complaint is time-barred. This argument is based on Illinois law, which provides that, when an underlying action has been filed, "no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later." 735 ILCS 5/13-204.

American Equipment was served with the complaint in this matter prior to April 14, 2009, which is the date it filed its first Motion to Dismiss. See Doc. #3. American Equipment filed its Third-Party Complaint for contribution against Soilmec SpA on May 9, 2011. See Doc. #60. That is, as pointed out by Soilmec SpA, more than the 2 years allowed by the Illinois statute.

21

American Equipment responds by pointing out that on April 13, 2011 - a date within the 2 year limitation period - it filed its motion for leave to file a third party complaint against Soilmec SpA (#58); attached to that motion was a proposed third-party complaint. The Court set a hearing on the motion for leave, which was held on May 9. During that hearing, the motion for leave to file was granted. See Minutes of Hearing 5/9/11. The third party complaint was filed that same date. According to American Equipment, a complaint is deemed filed as of the time it is submitted to the court together with a request for leave to file an amended pleading.

As a general rule in both federal and state court that a complaint is deemed filed as of the time it is submitted to a court together with a request for leave to file the amended pleading. Buller Trucking v. Owner Operator Independent Driver Risk Retention Group Inc, 461 F. Supp. 2d 768, 776-7, citing Schillinger v. Union Pacific R.Co., 425 F.3d 330, 334-35 (7th Cir. 2005)(citing Illinois cases). A number of District Courts have recognized and approved this rule in diversity actions. See, Buller, 461 F. Supp.2d at 768 (applying Illinois law and citing cases); Eaton Corp. v. Appliance Valves Co., 634 F. Supp. 974 (N.D.Ind. 1984)(applying Indiana law).

The problem is that these cases do not involve adding a new party, a distinction made by the Illinois Supreme Court in Ragan v. Columbia Mut. Ins. Co., 701 N.E.2d 493, 498 (Ill.1998), when that Court considered an amendment that added prejudgment interest. The Court cited and distinguished 3 cases in which amendments adding new parties after the statute of limitations had expired were found untimely. In Green v. Helis, 625 N.E.2d 162 (Ill.App.1993), an injured party sued decedent's estate. The plaintiff sought to substitute the decedent's representative after the statute of limitations had run. The court dismissed the action for untimeliness, and on appeal that ruling was affirmed. The appellate court found that the amended pleading did not relate back under

22

Illinois law where there was no evidence that the estate knew, before the limitations period expired, that suit had been filed against the decedent. <u>Id.</u> at 165.

In <u>Torley v. Foster G. McGaw Hosp.</u>, 452 N.E.2d 7 (Ill.App.1983), the plaintiff had originally named two persons as "respondents in discovery" but failed to seek leave to add them as defendants before the statutory deadline for doing so expired. The court of appeals held that this deprived the trial court of jurisdiction over their persons and denied plaintiff the right to proceed against them. <u>Id.</u> at 23-24. See also, <u>Glickauf v. Moss</u>, 320 N.E.2d 132 (Ill.App.1974)(realignment of corporation from plaintiff to defendant could not be accomplished simply by amending pleadings; plaintiff must obtain summons and serve corporation).

In this case, the "amended" pleading was actually a new complaint against a new party. It does not fall within the parameters of the Rule on which American Equipment relies. The third party complaint was therefore untimely filed. The Motion to Dismiss the third party complaint as time barred is GRANTED.

### III. CONCLUSION

As stated herein, Soilmec SpA's motion to dismiss (#66) is GRANTED. Soilmec SpA is dismissed as a party to this case.

ENTERED ON March 19, 2012

s/ John A. Gorman

JOHN A. GORMAN

UNITED STATES MAGISTRATE JUDGE